UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

OLIVE GRAVES,

        Plaintiff,

   v.

UNITED STATES OF AMERICA,

        Defendant.

NO. CIV S-05-1661 FCD GGH

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on defendant United States of America's ("defendant") motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure,[1] or in the alternative, for summary judgment pursuant to Rule 56. Plaintiff Olive Graves[2]

///

---

[1] All further references to a "Rule" are to the Federal Rules of Civil Procedure, unless otherwise noted.

[2] On March 8, 2007, the parties stipulated that Olive Graves is no longer a party to this action by reason of her death on December 9, 2006, and that Gay Graves, Trustee of the Olive Graves Family Trust, is substituted as a party to this action in place of Olive Graves. (Stipulation and Order, Docket #32, filed Mar. 8, 2007).

("plaintiff") opposes the motion.  For the reasons set forth below,[3] defendant's motion is GRANTED.

## BACKGROUND[4]

Plaintiff filed this complaint on August 18, 2005, against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).  Plaintiff's claims arise out of a backfire set by employees of defendant on plaintiff's property.  Plaintiff alleges that defendant was negligent in that it "should not have started [a] backfire on plaintiff's property and that no reasonable fire fighter would have done so in light of the attendant facts and circumstances that [defendant] should have be aware of before they started the back fire." (Compl., filed Aug. 18, 2005, ¶ 7).

The Cannon Fire wildfire ignited on June 15, 2002 on lands administered by the Bridgeport District of the Humboldt-Toiyabe National Forest.  It consumed a total 20,020 acres before firefighters extinguished it on June 19, 2002.  Suppressing the

---

[3] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[4] The parties do not dispute the essential facts of this case. (See Pl.'s Opp'n to Def.'s Mot. to Dismiss, filed Mar. 5, 2007, at 2 ("Pl.'s Opp'n")).

Defendant objects to the only evidence cited by plaintiff in the opposition, the declaration of Richard Schell, a liability expert, and his accompanying expert report.  Defendant argues that the expert report was never filed, and only a draft version was served on defendant a month after the completion of expert discovery.  Therefore, defendant moves to strike plaintiff's liability expert.  The court declines to rule on defendant's motion to strike plaintiff's expert because even considering this evidence, it fails to raise a triable issue of fact sufficient for plaintiff to withstand summary judgment.

2

fire required the efforts of approximately 1500 personnel, 44 crews, and over 100 fire engines.

On June 15, 2002, Bridgeport District Ranger Kathleen Lucich determined that the Cannon Fire'sسprawling northerly advance had the potential to threaten the town of Walker, California. The following day, Ms. Lucich appointed Pat Murphy ("Murphy") as the Incident Commander, responsible for overall management of the Cannon Fire suppression effort. By June 17, 2002, the fire's eastern edge was burning the western boundary of Plaintiff's 142 acre property to Highway 395 and the Walker River, which parallel each other and bisect plaintiff's land. Winds from the south carried and deposited burning embers east of the highway, creating new fires.

Defendant asserts that Commander Murphy concluded from these developments that the Cannon Fire presented a clear and present danger to plaintiff's home and that he further determined that the only way to save her home, protect life, and stall the fire's north-easterly expansion was to burnout the fuels (native vegetation) around the home to stop the advancing flame front. Defendant also asserts that under these circumstances, burning out the fuels around structures is a common and effective suppression technique, and accordingly, Murphy ordered the burnout. Defendant contends that the burnout went as planned and likely saved Plaintiff's home.

Plaintiff asserts that defendant erroneously characterizes the fire ordered by Murphy as a "burnout." Plaintiff also asserts that the burning of plaintiff's property was unneccessary and that the government employee who reported the facts to the

3

command center "either intentionally made false representations or made representations with no possible belief that they were true." (Pl.'s Opp'n at 2). Plaintiff contends that plaintiff's home was never in danger, and that the fire ordered by Murphy caused unnecessary damage. (Id. at 3).

**STANDARD**

When considering dismissal for lack of jurisdiction, "the trial court may proceed as it never could under Fed R. Civ. P. 12(b)(6) or Fed R. Civ. P. 56. . . . No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979) (quotations omitted). Further, plaintiff bears the burden of demonstrating that jurisdiction does in fact exist. Id. "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

However, where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, "the trial court should employ the standard applicable to a motion for summary judgment." Id.; see also Careau Group v. United Farm Workers of America, 940 F. 2d 1291, 1293 (9th Cir. 1990). "[T]he question of jurisdiction and the merits of an action will be considered intertwined where . . . 'a statute provides the basis for both the subject matter jurisdiction of

4

the federal court and the plaintiff's substantive claim for relief." Sun Valley Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 139-40 (9th Cir. 1983) (quoting Timberlane Lumber Co. v. Bank of America, 549 F.2d 597, 602 (9th Cir. 1976).

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

5

253, 288-289 (1968).  In attempting to establish the existence of this factual dispute, the opposing party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, id. at 251-52.  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

## ANALYSIS

Defendant argues that it is immune from suit under the "discretionary function" exception to the Federal Tort Claims Act ("FTCA").  The FTCA waives sovereign immunity and allows tort claims to be brought against the government that arise out of the negligent conduct of government agents acting within the scope of their employment.  28 U.S.C. §§ 2671-80 (West 2007); Miller v. United States, 163 F.3d 591, 593 (9th Cir. 1998).  However, that waiver is limited by § 2680 of the FTCA, which provides:

> The provisions of this chapter . . . shall not apply to [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of

6

a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (West 2007).  This exception covers "acts that are discretionary in nature, acts that 'involve in element of judgment or choice.'"  United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)).  It is intended "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  Id.

"The applicability of the discretionary function exception is determined by a two-part test."  Miller, 163 F.3d at 593.  The court must first determine "whether the action is a matter of choice for the acting employee."  Berkovitz, 486 U.S. at 536. This requires an element of judgment or choice.  Id.  "Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  Id.  If discretion is involved, the court must next determine "whether that judgment is of the kind that the discretionary function exception was designed to shield."  Id.  The focus of this inquiry is "on the nature of the actions taken and on whether they are susceptible to policy analysis."  Gaubert, 499 U.S. at 325.  "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy in exercising that discretion."  Id. at 324.

7

The government bears the ultimate burden of proving the applicability of an exception to the FTCA.  Prescott v. United States, 973 F.2d 696, 702 (9th Cir. 1992).  However, "plaintiff bears the burden of coming forth with sufficient evidence to establish there are genuine issues of material fact regarding the applicability of the discretionary function exception." Miller, 163 F.3d at 594.

**1.  Discretion**

Considering the first prong of the two-part test, the court must determine whether there was a federal statute, regulation, or policy in place that specifically prescribed a particular course of action by the government regarding the Canon Fire and the subsequent fire set on plaintiff's property.  If the government was required to take a certain course of action, there can be no discretion.  Berkovitz, 486 U.S. at 536; Miller, 163 F.3d at 594.

Plaintiff contends that the Forest Service Manual ("FSM") imposes "mandatory objectives" on defendant, and thus, the conduct is not discretionary.  Specifically, plaintiff cites (1) § 5106.01 of the FSM, which provides that an objective is "to minimize fire loss and damage to structures, other human development, and wildland resources;" and (2) § 5130.3(2) of the FSM, which provides that "[r]esponsible officials shall onduct fire suppression in a timely, effective, and efficient manner, giving first priority to firefighter and public safety."  (Opp'n at 4-5; Forest Service Manual as in effect in June 2002 ("FSM"), attached as Ex. A-1 to Def.'s Mot., filed Feb. 1, 2007).
///

Plaintiff's argument fails on its face. The FSM provides *objectives* and *policies* for fighting forest fires, *not* "a course of action for an employee to follow." Berkovitz, 486 U.S. at 536. An *objective* or *policy* is not "the kind of '*specific* and *mandatory* regulation or statute [or policy] which creates clear duties incumbent upon the governmental actors.'" Parsons v. United States, 811 F. Supp. 1411, 1416 (E.D. Cal. 1992) (quoting Kennewick Irr. Dist. v. United States, 880 F.2d 1018, 1026 (9th Cir. 1989) (emphasis in original) ("A general statutory duty to promote safety . . . would not be sufficient.").

Rather, the Ninth Circuit has specifically held that "the Forest Service retained considerable discretion in deciding how to allocate suppression resources" in regards to fire control, as at issue in this case. Miller, 163 F.3d at 595. The Miller court also held that even where federal and state laws outline certain requirements for fire suppression, "they do not eliminate discretion because they do not tell firefighters how to fight the fire." Id. They do "not tell the Forest Service to suppress the fire in a specific manner and within a specific period of time. . . . The existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." Id. (citations omitted).

As such, in this case, the action of defendant setting fire to plaintiff's property in an effort suppress the Cannon Fire and defend plaintiff's home involved an element of choice. Therefore, defendant has satisfied the first prong of the two-part discretionary function analysis.

**2.   Policy Considerations**

Considering the second prong of the two-part test, the court must determine whether the government's decision to set the fire on plaintiff's property is "susceptible to a policy analysis grounded in social, economic, or political concerns." Miller, 163 F.3d at 595.

Defendant points to the FSM, beginning at § 5100, which addresses fire management and sets forth the agency's authority, objective, policies, responsibilities, definitions and references.  The pertinent objectives and policies for fighting forest fires are stated in the FSM as follows:

> Section 5102 - Objectives.
> Forest service fire management activities should result in safe, cost-effective, fire management programs that protect, maintain and enhance National Forest System lands.
> * * *
> 5106.01 - Objectives.
> The objectives of wildland/urban interface fire management are:
> 1.   To facilitate interagency fire prevention and protection to minimize fire loss and damage to structures, other human development, and wildland resources.

(FSM, Ex. A-1 to Def.'s Mot.).  The FSM provides objectives and policies relating to fire suppression:

> 5130.2 - Objective.
> Safely suppress wildfires at minimum cost consistent with land and resource management objectives and fire management direction as stated in Fire Management Plans.
>
> 5130.3 - Policy.
> 1.   Line Officers are expected to ensure that suppression planning, operations, and personnel comply with Service-wide wildfire suppression principles and practices as set out in the Fireline Handbook, FSH 5109.32a, the Firefighters Guide (FSM 5108), and the Health and Safety Handbook, FSH 6709.11.

10

    2.    Responsible officials shall conduct fire suppression in a timely, effective, and efficient manner, giving first priority to firefighter and public safety.

    3.    In making decisions about how to organize and conduct suppression operations (suppression strategies), line officers shall minimize both suppression cost and resource loss consistent with the resource management objectives for the values to be protected.  Consider fire behavior, the availability of suppression resources, the values of natural resources and property at risk, direction in the land and resource management plan, and the potential cost of suppression.  Use a Wildland Fire Situation Analysis to document suppression strategy decisions.

(FSM 5131.1).

    The FSM also directs agency employees to use a decision-making process, the Wildland Fire Situation Analysis ("WFSA"), before choosing a particular course of action against a wildfire (FSM § 5131.1 et seq.).  The WFSA "documents the decision-making process for determining the appropriate suppression action" following the development of alternatives that incorporate certain evaluation criteria.  (FSM §§ 5131.1, 5131.12).  Each suppression alternative must:

    a.    Focus on firefighter and public safety,
    b.    Be implementable,
    c.    Be accompanied by a strategic plan of action,
    d.    Calculate the forces required in consideration of those available,
    e.    Assess the probability of success and consequences of failure (using a decision tree), and
    f.    Estimate the time of containment and control, acres burned, suppression cost, and resource damage.

(FSM 5131.12.2).  Finally, the FSM allows the delegation of responsibility to fight the fire to an Incident Commander, in this case Murphy.  (FSM § 5131.03).  The delegation letter provided that Murphy had "the full authority to implement the

11

selected [WFSA] alternative and responsibility for management of all aspects of the suppression effort." (Delegation Letter, Ex. B-2 to Def.'s Mot, filed Feb. 1, 2007, at 1).  The delegation later emphasized key suppression points and listed priority considerations for implementing the selected alternative.  (Id. at 1-3).  These priorities included: (1) insuring personnel and public safety; (2) protection of non-Federal lands and associated structures;[5] (3) avoiding impacts to the threatened Lahontan Cutthroat Trout and Yosemite Toad in Mill Creek; (4) protecting the riparian meadow habitat of Mountain yellow-legged frog; (5) protecting wilderness character and values, using minimum impacts tools and strategies; (6) avoiding a historic immigrant trail; (7) maintaining regular communication with affected non-Federal in-holders; (8) rehabilitation of fire suppression impact areas; (9) demanding a high level of ethical conduct; (10) efficiency and cost-effectiveness; and (11) completing standard, mandatory forms.  (Id. at 2-3).

The Ninth Circuit has specifically held that the FSM, and the stated objectives and policies therein, "demonstrate that the Forest Service's decision regarding how to attack a fire involve[s] a balancing of consideration, including cost, public

---

[5] Plaintiff disputes that Murphy's appointment granted him authority to protect structures until June 18, 2002.  (Pl.'s Opp'n to Undisp. Facts, filed Mar. 5, 2007, ¶ 6).  The underlying expert report cited to by plaintiff states that this authority was only delegated through the delegation letter to Incident Commander Joe Stuttler, Ex. B-3 to Def.'s Mot.  However, this delegation was also granted to Murphy.  (Delegation Letter, Ex. B-2 to Def.'s Mot., at 2) ("Hold/construct line to keep fire from reaching and involving CDFG and private [] structures in . . . the community of Walker.").  As such, this is not a genuine dispute of fact.

safety, firefighter safety, and resource damage." Id.  In Miller, the court considered the same objectives and policies at issue in this case, including one identified by plaintiff as establishing a mandatory duty.  Id.  The court found that the considerations in the FSM "reflect the type of economic, social and political concerns that the discretionary function exception is designed to protect."  Id.

In this case, the objectives and policies set forth in the FSM, along with the criteria evaluated in formulating the WFSA, as well as the priorities to be considered by the Incident Commander as set forth in the delegation letter, clearly reflects that the decision in how to suppress the Cannon Fire requires a balancing of numerous objectives and interests.  These considerations are expansive in breadth, and implicate economic, social, and political concerns.  "Where the government is forced, as it was here, to balance competing concerns, immunity shields the decision."  See Miller, 163 F.3d at 595-96; Parsons, 811 F. Supp. at 1417-19; Defrees v. United States, 738 F. Supp. 380, 385 (D. Or. 1990).  As such, under the two-step approach, defendant has demonstrated that its conduct in setting fire to plaintiff's land in an effort to suppress the Cannon Fire was a discretionary function and thus, the government is immune from suit.

/////
/////
/////
/////
/////
/////

### 3. Negligence

Plaintiff does not dispute that the Wildlife Fire Situation Analysis was performed.[6] Rather, plaintiff contends that the WFSA was not and could not be properly implemented because of misinformation that was provided. (Opp'n at 5). In other words, plaintiff argues that the government employees operated on a false or incomplete information, and thus, failed to carry out their objectives. This is the heart of plaintiff's negligence claims.

However, the Ninth Circuit has made clear that "negligence is simply irrelevant to the discretionary function inquiry." Kennewick, 880 F.2d at 1029. Section 2680(a) offers immunity for discretionary functions "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); Kennewick, 880 F.2d at 1029. "[I]f the presence of negligence were allowed to defeat the discretionary function exception, the exception would provide a meager shield indeed against tort liability." Id.

Therefore, because the discretionary function exception applies to defendant's actions in this matter, defendants' arguments and evidence relating to alleged misinformation and negligence are irrelevant.[7]

---

[6] Defendant presents evidence that Kathleen Lucich prepared the WFSA for the Cannon Fire on June 15, 2002, at approximately 5:46 p.m. (Decl. of Kathleen Lucich, Ex. B to Def.'s Mot., filed Feb. 1, 2007, ¶ 5). The WFSA is attached as Exhibit B-1.

[7] Plaintiff also disputes that the fire set by defendants was a "burn-out." Plaintiff contends that the firing operation on the property does not fall within the definition of "burning out" because there was no evidence of a control line in place.
(continued...)

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss under 12(b)(1) or, in the alternative, for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: March 12, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[7](...continued)
(Expert Report, Ex. 3 to Decl. of Stephen A. Cain in Opp'n to Def.'s Mot. ("Cain Decl"), filed Mar. 5, 2007, at 7, 9). Plaintiff's expert fails to indicate how the firing operation should be classified or why this classification is relevant to this case.  Further, plaintiff's present no evidence to dispute defendant's evidence that, regardless of the classification, the firing operation was conducted in order to suppress the fire and defend plaintiff's home.  (Decl. of Pat Murphy in Supp. of Def.'s Mot, filed Feb. 1, 2007, ¶¶ 9-11).  As such, this "factual dispute" does not raise a genuine issue of *material* fact regarding the applicability of the discretionary function exception.

15